**OLEOPROTEINAS DEL SURESTE, S.A., et al., Plaintiffs,**

v.

**THE FRENCH OIL MILL MACHINERY CO., et al., Defendants.**

No. C–3–93–278.

United States District Court, S.D. Ohio, Western Division.

Dec. 5, 2000.

Charles Joseph Faruki, Faruki, Gilliam & Ireland, Dayton, OH, Ronald B. Ravikoff, Guy A. Rasco, Christopher S. Carver, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, for plaintiffs.

David J. Carney, Keila Cosme, John A. Heer, Calfee, Halter & Griswold, Cleveland, OH, John J. Eklund, Peter J. Comodeca, Mark S. Yacano, John P. Susany, Stark & Knoll, Akron, OH, Rhonda R. Chandler, Floyd, Rios & Wahrlich, P.C., Houston, TX, for defendants.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR DISMISSAL WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 41(b) (DOC. # 241); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

This litigation arises out of the alleged failure of soybean solvent processing equipment to function as expected. Plaintiffs, the purchasers of that equipment, initiated this action, seeking to recover damages they allegedly suffered as a result of the Defendants' conduct in connection with the design, manufacture and sale of that equipment. According to the Plaintiffs, that conduct constituted a breach of the contract between the parties and amounted to fraud. This case is now before the Court on the Defendants' Motion for Dismissal With Prejudice Pursuant to Fed.R.Civ.P. 41(b) (Doc. # 241). As the caption of that motion indicates, the Defendants have requested that this Court dismiss this litigation with prejudice. Although not reflected in the caption of their motion, the Defendants request that the Court place conditions on the dismissal of this litigation, if it should decide that dismissal without prejudice is warranted. In response, Plaintiffs' counsel states that the Court should dismiss this litigation without prejudice and without conditions.[1] *See* Doc. # 241.

---

1. In addition to defending against the Plaintiffs' claims, Defendant French Oil Mill Machinery Company has plead a counterclaim against Plaintiffs. *See* Doc. # 210. The other Defen- dants, employees of French Oil Mill Machinery Company, have not asserted counterclaims against the Plaintiffs. With the instant motion, all Defendants have requested that this litigation

The Defendants argue that this Court should dismiss this litigation with prejudice, because the Plaintiffs on two occasions have unilaterally canceled mediation sessions which had been scheduled in this matter. In addition, the Defendants point out that, throughout this lengthy litigation, the Plaintiffs have been dilatory in complying with their obligation to provide discovery. For reasons which follow, this Court concludes that this litigation must be dismissed with prejudice. The Court begins by reviewing the relevant events.

On March 18, 1997, this Court entered a Decision, in which it addressed the Defendants' request that the Plaintiffs' claims be dismissed with prejudice, as a sanction for their failure to provide discovery in a timely fashion. See Doc. # 186. Therein, the Court found that the Plaintiffs had unquestionably been dilatory in the production of documents, computer disks and the report of their damages expert. However, since the Court could not find that the Plaintiffs had willfully failed to provide discovery or that they had acted in bad faith,[2] it concluded that the Plaintiffs' actions did not warrant the ultimate sanction of dismissal with prejudice. The Court concluded that an award of attorney's fees could remedy any prejudice the Defendants had suffered as a result of the Plaintiffs' actions.[3] The Court also declined to dismiss this litigation with prejudice, because it had not warned the Plaintiffs that their failure to cooperate with discovery could lead to such a dismissal of their claims. The Court did, however, caution that such a sanction could be imposed in the future, if the Plaintiffs were found to be responsible for any further discovery delays.

In July, 1998, this Court conducted a telephone conference call with counsel to discuss the effect that bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas would have on this litigation.[4] See In re Xacur, 216 B.R. 187 (Bkrtcy.S.D.Tex.1997), affirmed without opinion, 211 F.3d 125 (5th Cir.) (Table), cert. denied, 121 S.Ct. 63 (2000). Those proceedings arose out of an involuntary petition for bankruptcy filed against Jacobo Xacur ("Xacur"), the majority shareholder for each of the Plaintiffs in this litigation. During that conference, the parties took opposite views as to whether those proceedings would impact upon this litigation, with the Plaintiffs taking the position that the bankruptcy proceedings had no impact, given that they were against Xacur in a personal, rather than corporate, capacity. See Doc. # 241 at Ex. 6. See also, Doc. # 204. The Defendants, on the other hand, argued that the Court should stay this litigation and permit them to negotiate a settlement with the Trustee in the bankruptcy proceeding. See Doc. # 207. In August, 1998, the Court conducted a second telephone conference call, during which the question of whether this litigation should be stayed was discussed.

The Court declined to enter a stay of litigation in the matter. Thereafter, the Plaintiffs filed a motion, requesting that this Court compel mediation. See Doc. # 222. The Court concurred with the Plaintiffs and directed the parties to mediate, on October 13, 1999, before Judge John Meagher, a retired jurist of the Montgomery County Court of Common Pleas. However, one day prior to that date, Plaintiffs unilaterally canceled that mediation session.[5] On March 29, 2000, the Court entered an Order, directing the parties to confer in order to select a mutually

---

be dismissed, as opposed to merely asking for the dismissal of Plaintiffs' claims; therefore, the Court assumes that the Defendants are also seeking dismissal of the counterclaim which has been plead by French Oil Machinery Company. Given that the current state of this litigation results from the actions of the Plaintiffs, rather than those of the Defendants, the Court will dismiss the claims of French Oil Mill Machinery Company without prejudice, regardless of the manner in which it dismisses the Plaintiffs' claims.

2. In part, the Court based its finding that the Plaintiffs had not acted willfully or in bad faith on their status as Mexican corporations, unfamiliar with the liberal discovery rules applicable in a United States District Court.

3. The Court did not, at that time, make such an award; rather, it directed the Defendants to renew their request for attorney's fees at the conclusion of this litigation.

4. In addition, the Plaintiffs have initiated a Suspension of Payments Proceeding in Mexican court. This proceeding protected the Plaintiffs' assets from their creditors. According to the Plaintiffs, that filing does not effect their ability to pursue this litigation. See Doc. # 203.

5. Plaintiffs' counsel informed counsel for the Defendants that the mediation would have to be rescheduled because his clients' representative would be unable to attend. However, Plaintiffs did not file either a request to delay the media-

agreeable date for the mediation, to occur during the last two weeks of August, 2000. *See* Doc. # 232. In accordance with the parties' agreement, the Court ordered that the mediation take place on August 22, 2000. *See* Doc. # 234. Less than a week before that date, Plaintiffs' counsel, once again, unilaterally canceled the mediation, citing difficulties in communicating with his clients.

On August 21, 2000, one day before the scheduled date for the second mediation, Plaintiffs' counsel filed a motion requesting that they be permitted to withdraw from representing their clients. *See* Doc. # 236. In that motion, counsel indicated that they have had increasing difficulty communicating with their clients' representatives, a problem which had come to a head with the pending mediation. According to Plaintiffs' counsel, despite their efforts to communicate with their clients on nearly an hourly basis, those clients had failed to inform them of their willingness and ability to participate in the mediation, of the identity of their representative or of their negotiating position during that process. Plaintiffs' counsel also stated that the failure of their clients to provide direction concerning their wishes for this litigation and for the mediation made it impossible for them to continue to represent them.

This Court denied the request of Plaintiffs' counsel for leave to withdraw, noting that the Plaintiffs' inattention to this litigation had caused two mediation sessions to be canceled.[6] In addition, the Court stated that, if the Plaintiffs failed to show good and sufficient cause as to why the mediation scheduled for August 22nd had been canceled, this litigation would be dismissed, either with or without prejudice. *See* Doc. # 237 at 2. The Court also directed Plaintiffs' counsel to notify their clients of the prospect of dismissal. Plaintiffs' counsel has complied with that directive. *See* Doc. # 238. In response to the Court's statement that this litigation would be dismissed, in the absence of a showing of good and sufficient cause for the cancellation of the August 22nd mediation, Jorge Luis Novello Gongora ("Gongora"), a Mexican representative of the Plaintiffs, wrote to the Court, explaining that the Plaintiffs had canceled the August 22nd mediation because of the pending bankruptcy proceedings in the Southern District of Texas.[7] By Entry dated September 19, 2000, the Court directed the Defendants to respond to Gongora's letter. *See* Doc. # 240. As a result, the Defendants filed the instant Motion for Dismissal With Prejudice Pursuant to Fed.R.Civ.P. 41(b) (Doc. # 241). In response to that motion, Plaintiffs' counsel requested that the Court dismiss this litigation without prejudice and without conditions.

Rule 41(b) of the Federal Rules of Civil Procedure provides that, "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." That Rule also provides that, unless the District Court specifies otherwise, such a dismissal "operates as an adjudication on the merits," i.e., with prejudice. In *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359 (6th Cir.1999), the Sixth Circuit addressed Rule 41(b). Therein, the District Court had dismissed the plaintiff's complaint for failure to prosecute pursuant to Rule 41(b),[8] after which the plaintiff appealed, arguing that the District Court's order constituted an abuse of discretion. In rejecting that argument and, thus, affirming the Decision of the District Court, the Sixth Circuit discussed the standards which a District Court must apply when considering whether to dismiss a plaintiff's complaint pursuant to Rule 41(b):

tion, as a result, or an explanation as to why such a delay was necessary.

6. The Court also indicated that the problem of Plaintiffs' inattention to this litigation could only worsen, if it were to permit counsel to withdraw.

7. A copy of Gongora's letter is attached to Doc. # 240.

8. Therein, the plaintiff had alleged that the defendant had discriminated against him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Although the District Court indicated that its dismissal was without prejudice, the effect of that order was to dismiss the plaintiff's claim under that statute with prejudice, given that the ADEA provides that a complaint must be filed within 90 days of the receipt of a right-to-sue letter. *See* 29 U.S.C. § 626(e). Since the District Court dismissed the plaintiff's complaint long after that period had expired, a new action under the ADEA would have been barred by § 626(e).

This court has been "reluctant to uphold the dismissal of a case ... merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric., Farmers Home Admin.,* 960 F.2d 603, 608 (6th Cir.1992). Hence, "[a]lthough the *Link* [*Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)] principle remains valid, ... we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Coleman v. American Red Cross,* 23 F.3d 1091, 1095 (6th Cir.1994) (citation omitted). In the context of dismissal pursuant to Rule 41(b) for failure to prosecute, we look to four factors for guidance: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Stough v. Mayville Community Sch.,* 138 F.3d 612, 615 (6th Cir.1998). Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct. *Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir.1980).

*Id.* at 363. *See also, Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks, Inc.,* 173 F.3d 988, 992 (6th Cir.1999) (applying the same four factors when deciding whether the District Court had abused its discretion when dismissing a plaintiff's complaint with prejudice for failure to prosecute under Rule 41(b)).

■ The first factor identified by the Sixth Circuit in *Knoll* is whether the party's failure to prosecute is due to willfulness, bad faith or fault. Putting aside for a moment the question of whether the Plaintiffs have acted with bad faith, this Court is compelled to find that the Plaintiffs have willfully failed to prosecute this litigation by canceling the two scheduled mediation sessions. In *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir.1995), the Sixth Circuit said that a party willfully fails to comply with a discovery order when there is a conscious and intentional disregard of that order.[9] Herein, it is inescapable that the Plaintiffs consciously and intentionally disregarded this Court's orders pertaining to mediation. The Plaintiffs requested that this Court schedule the mediation sessions and were well aware of the dates upon which they were to occur. Nevertheless, the Plaintiffs, on two occasions, unilaterally canceled those sessions. There is absolutely no suggestion that the Plaintiffs lacked actual notice of the two mediation sessions (as opposed to their having constructive notice because only their counsel had been informed).[10] Although the dates for the two mediation sessions had been established well in advance of when they were to take place, the Plaintiffs did not, in either instance, file a motion in advance of the respective date, requesting that the Court delay the session or explaining why such a delay was necessary. Rather, Plaintiffs' counsel, who had been unable to communicate fully with their clients regarding the mediation sessions, merely called opposing counsel to inform them that the mediation was being canceled. Moreover, this Court rejects Gongora's suggestion that the pendency of bankruptcy proceedings in the Southern District of Texas, as an alleged reason for the Plaintiffs' non-participation in the mediation process, means that their actions were not willful. The Plaintiffs have consistently taken the position that those proceedings, which have been pending since

---

**9.** Although *Bass* arose out of the imposition of sanctions pursuant to Fed.R.Civ.P. 37, rather than dismissal for failure to prosecute under Rule 41(b), it is appropriate to apply the definition of willfulness set forth therein, given that the standards for the imposition of the sanction of dismissal under Rule 37 are the same as those which are applicable to dismissals under Rule 41(b). *Compare Bank One of Cleveland v. Abbe,* 916 F.2d 1067, 1073 (6th Cir.1990), *with Knoll, supra.*

**10.** This is not an instance where the derelictions of a party's counsel are being visited upon the client. On the contrary, Plaintiffs' counsel indicate that they repeatedly attempted to communicate with their clients' representatives concerning the mediation sessions, only to be ignored by their clients, much like those clients have ignored this Court's Orders.

1996, do *not* impact upon this litigation or serve as the basis for entering an order staying same. In addition, the involuntary bankruptcy proceedings were initiated against Xacur, as an individual, rather than against the Plaintiffs. Accordingly, the Court finds that the Plaintiffs willfully failed to prosecute this litigation by unilaterally canceling the two mediation sessions.

Moreover, the Plaintiffs' unilateral cancellation of the two mediation sessions must be analyzed in the context of other events which have occurred in this litigation. For instance, in its Decision of March 18, 1997 (Doc. # 186), the Court enumerated the Plaintiffs' failure to provide discovery in a timely fashion. In particular, the Court noted that the Plaintiffs had been dilatory in their production of documents, computer disks and the report of their damages expert.[11] In addition, despite the Plaintiffs having consistently taken the position in this litigation that the bankruptcy proceedings in the Southern District of Texas have no impact on this lawsuit, Plaintiffs, through Gongora, have attempted to justify their non-participation in the August 22nd mediation, by reference to those proceedings. In its

Decision of March 18, 1997, the Court concluded that the above examples of Plaintiffs' neglect did not warrant the ultimate sanction of dismissal with prejudice. Moreover, Plaintiffs reliance on the bankruptcy proceedings as an excuse for failing to participate in the August 22nd mediation session would not, in and of itself, warrant such a dismissal. Nevertheless, the Plaintiffs' failure to provide discovery in a timely fashion *and* their sudden shift of position in relying upon the bankruptcy proceedings, coupled with their disregard of this Court's Orders relating to mediation, evidence *a clear and unmistakable pattern of non-cooperation and of willfully delaying the ultimate resolution of this litigation.* The existence of such a pattern can lead only to the finding that the Plaintiffs' have willfully failed to prosecute this litigation.

Additionally, the same evidence raises an unrebutted inference that the Plaintiffs (as opposed to their counsel) have acted in bad faith and that the delays in this litigation are the fault of the Plaintiffs themselves. As is indicated, the Plaintiffs were fully aware of the dates upon which the two mediation sessions were scheduled.[12] Not only did they

11. Therein, this Court noted that the Plaintiffs' production of documents had been piecemeal. On October 25, 1993, the Defendants served their First Request for the Production of Documents upon the Plaintiffs. Rather than respond in a timely fashion to that discovery request, the Plaintiffs produced responsive documents on eleven occasions over the following three years. The negative impact on the Defendants' attempts to conduct discovery, caused by the Plaintiffs' dilatory production of documents, was amply demonstrated by the fact that the Plaintiffs' employees frequently testified during their depositions about the existence of numerous documents which existed, yet had not been produced to the Defendants. In addition, the Plaintiffs were delinquent in their production of computer disks, which contained information responsive to the Defendants' discovery requests. When some such disks were produced, the Plaintiffs neglected to provide the computer program which would have permitted the Defendants to read the disks. This problem was not rectified until the Defendants filed their Motion for Sanctions. With respect to Plaintiffs' damages expert, the Court's Scheduling Entry required the Plaintiffs to provide expert reports by February 1, 1994. On or about that date, the Plaintiffs did provide reports from their experts, including their damages expert, BDO

Seidman. However, the report by BDO Seidman was preliminary. Plaintiffs did not furnish a final report by BDO Seidman until October, 1996, more than two and one-half years later.

12. Although an affidavit from an agent of the Plaintiffs, conceding that they were aware of the dates of the two mediation sessions, is not before the Court, the other filings demonstrate beyond question that the Plaintiffs had actual knowledge of the scheduling of those sessions. The Court scheduled the two mediation sessions at the Plaintiffs' request. After the Plaintiffs had unilaterally canceled the first such session, the Court conducted a telephone conference call with counsel on March 24, 2000. *See* Doc. # 232. During that call, Plaintiffs' counsel indicted that their client would be prepared to mediate this litigation by the middle of August, 2000. *Id.* As a consequence, counsel were directed to advise the Court as to their and their clients availability to mediate, between August 16th and August 31, 2000. *Id.* Thereafter, the Court ordered that the mediation take place on August 22, 2000. *See* Doc. # 234. After Plaintiffs unilaterally canceled that session, the Court directed Plaintiffs' counsel to inform their clients that this litigation would be dismissed, with prejudice, if they (Plaintiffs) did not show cause as to why the mediation session had been canceled. *See* Doc. # 237.

unilaterally cause those sessions to be canceled, but they have also failed to confer with and to provide direction to their counsel concerning the scheduled mediations.

Based on the foregoing, the first *Knoll* factor weighs in favor of dismissal with prejudice.

■ The second *Knoll* factor is whether the party seeking dismissal has been prejudiced by the failure of the other party to prosecute. Herein, the Defendants have incurred expenses on two occasions to prepare for mediation sessions, only to have the Plaintiffs cancel them at the last minute. Therefore, the actions of the Plaintiffs have caused the Defendants to incur wasted expenses.[13] Moreover, this litigation has been pending for more than seven years. As a consequence, the Defendants have been exposed to substantial, potential liability for a significant period of time. The ability of an entity such as French Oil Mill Machinery Company to conduct business while being exposed to such a potential liability cannot be other than impaired.[14] To dismiss this litigation without prejudice would extend that period of time even further and, thus, cause that harm to continue.[15] The Defendants are entitled to closure, without being faced with the prospect of further litigation. They have been denied the opportunity to bring this litigation to a close to this point by the Plaintiffs' failure to prosecute. Consequently, consideration of the second *Knoll* factor warrants dismissal with prejudice.

■ The third *Knoll* factor requires this Court to consider whether the Plaintiffs have been previously warned that their failure to cooperate could lead to dismissal. In its Decision of March 18, 1997, this Court found that the Plaintiffs had been dilatory in complying with their obligation to provide discovery. *See* Doc. #186. Although, therein, the

Court rejected the Defendants' request that the Plaintiffs' claims be dismissed with prejudice at that time, it explicitly warned the Plaintiffs that any future failure to cooperate with discovery could lead to such a dismissal with prejudice. *Id.* While that warning was expressly directed at discovery, it put the Plaintiffs on notice that their failure to cooperate would not be treated lightly by the Court. Therefore, this Court finds that the Plaintiffs were warned, well in advance of the two instances in which they unilaterally canceled mediation sessions, that their further failure to cooperate could lead to dismissal with prejudice. Accordingly, consideration of the third *Knoll* factor warrants such dismissal.

■ The fourth *Knoll* factor requires this Court to consider whether sanctions, less drastic than dismissal with prejudice, might be appropriate. One such lesser sanction could be an award of attorney's fees to the Defendants to compensate them for the expenses incurred and wasted to prepare for the two mediation sessions. Given the precarious financial condition of the Plaintiffs and Xacur, their majority owner, it is unlikely that an award of attorney's fees would alleviate the prejudice which the Defendants have suffered as a result of the Plaintiffs' unilateral cancellation of those mediation sessions. Quite simply, such an award would in all probability be uncollectable. Moreover, it is entirely unlikely that an award of attorney's fees would guarantee future cooperation by the Plaintiffs in this litigation (if the Court should decide not to dismiss this case) or in a future lawsuit based on the same events (if the Court should decide that dismissal without prejudice is warranted). In its Decision of March 18, 1997, the Court declined, at that time, to award attorney's

---

Plaintiffs' counsel so informed their clients (*see* Doc. #238), and, in response, Gongora sent a letter to the Court. *See* Doc. #240. Nowhere in that letter did Gongora remotely suggest that Plaintiffs had failed to participate in the mediation sessions, because their counsel had not informed them that the mediation had been scheduled.

13. As is discussed below, it is unlikely that an award of attorney's fees would compensate the Defendants for those wasted expenses.

14. For instance, the ability of a business and/or individuals to secure credit is reduced, due to a pending lawsuit with its concomitant large contingent liability. Moreover, the harm to the Defendants herein is exacerbated by the Plaintiffs' allegations in this lawsuit that they engaged in fraudulent activities.

15. In accordance with Ohio Revised Code § 2305.19, the Plaintiffs would have one year in which to re-file those claims for which the statute of limitations had expired prior to dismissal.

fees to the Defendants to compensate them for the expenses they had incurred as a result of the Plaintiffs' dilatory compliance with their obligation to provide discovery, in large measure because the issue could not be resolved without an evidentiary hearing at which counsel would need to testify. Since such testimony could have led to the disclosure of trial strategies, the Court indicated that the Defendants could renew their request for such an award at the conclusion of this litigation. The prospect of Plaintiffs' being required to compensate the Defendants, for expenses occurred as a result of their failure to provide discovery in a timely fashion, has failed to ensure subsequent cooperation from the Plaintiffs. Therefore, it is extremely unlikely that requiring them to pay attorney's fees to the Defendants for the unilateral cancellation of the two mediation sessions would deter future defaults. Of course, the Court could dismiss this litigation, without prejudice, a sanction less severe than dismissal with prejudice. However, the Court will decline to follow that course, since it would cause the Defendants to continue to have the sword of Damocles, represented by Plaintiffs' claims, hanging over them.[16] It bears emphasis that the current status of this litigation flows from the dilatory and obstructive actions of the Plaintiffs, rather than being the responsibility of the Defendants. Therefore, the Defendants should not be required to bear the burden of the Plaintiffs' continued failure to prosecute this litigation. Consequently, the Court concludes that a sanction, less severe than dismissal with prejudice, is not warranted in this litigation. Accordingly, consideration of the fourth *Knoll* factor warrants dismissal with prejudice.

In sum, consideration of all four factors identified by the Sixth Circuit in *Knoll* warrant dismissal with prejudice. Accordingly, based upon the foregoing, the Court sustains

the Motion for Dismissal With Prejudice Pursuant to Fed.R.Civ.P. 41(b) (Doc. # 241).[17] Judgment is to be entered in favor of Defendants and against Plaintiffs, dismissing Plaintiffs' claims with prejudice and the claims of Defendant French Oil Mill Machinery Company without prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**16.** Given that Plaintiffs' current counsel have sought leave to withdraw, it would seem to be unlikely that they would represent the Plaintiffs in any future litigation, if this Court would were to dismiss their claims without prejudice. Therefore, the Plaintiffs would in all likelihood be represented by new counsel in a future lawsuit, based upon the same events giving rise to this litigation. That state of events could cause the Defendants to incur significant costs of defense,

as new Plaintiffs' counsel attempted to become familiar with this litigation and, perhaps, attempt to redo much of his predecessors' discovery.

**17.** Because this Court has concluded that this litigation must be dismissed with prejudice, it is not necessary to address the Defendants' request that conditions be placed on a dismissal without prejudice.